IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GREGORY BINNS, ) | Civil Action No. 7:12-cv-00162 | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| HAROLD CLARKE, <u>et al.</u>, ) | By:   Hon. Michael F. Urbanski | |
|     Defendants. ) |        United States District Judge | |

      Gregory Binns, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights action pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"); L. Fleming, the Assistant Warden of the Keen Mountain Correctional Center ("KMCC"); Mr. Sykes, a KMCC Unit Manager; Ms. Payne, a KMCC psychologist; and KMCC correctional officers Lieutenant Fleming and Sergeant Mitchell. Plaintiff argues that defendants' treatment of him violates the Eighth and Fourteenth Amendments to the United States Constitution. This matter is before me for screening, pursuant to 28 U.S.C. § 1915A. After reviewing plaintiff's submissions, the court dismisses the complaint without prejudice for failing to state a claim upon which relief may be granted.

I.

      Plaintiff alleges the following facts in the complaint. Plaintiff suffers from "hyperactivity depression," bi-polar disorder, and paranoia. On December 19, 2011, plaintiff asked Sgt. Mitchell if he was on the "release list" from segregation. Sgt. Mitchell replied, "No," and plaintiff asked to speak with Unit Manager Sykes or Lt. Fleming. Before walking away, Sgt. Mitchell told plaintiff that he "would get something else" if he did not sit down.

A few minutes later, Sykes approached plaintiff's cell. Plaintiff complained that he had been on the segregation release list for two weeks but remained in segregation. Sykes ordered plaintiff to cuff-up, and plaintiff complied. Sykes asked plaintiff if he had anything that could be used to hurt himself, and plaintiff denied any intent to harm himself. Lt. Fleming allegedly said a racist term and threatened to kick plaintiff if plaintiff became disruptive. Sykes told plaintiff that Ms. Payne reported plaintiff was going to hurt himself and that plaintiff is being transferred to a strip cell.[1]

Once at the strip cell, plaintiff disrobed and put on a safety smock. Staff began to close the strip-cell door when Sgt. Mitchell arrived with a wrench to open plaintiff's cell window to allegedly allow plaintiff to cool down with fresh air. Plaintiff said he did not want the window open because it was cold outside. Sykes told plaintiff that he could either have the window open or have staff "kick [his] monkey ass and smile."

Ms. Payne arrived at the cell door and asked plaintiff how he felt. Plaintiff complained that he was in a strip cell without receiving a mental health evaluation and denied telling Sgt. Mitchell that he intended to harm himself. Ms. Payne decided to leave plaintiff in the strip cell until he was ready to tell the truth. Plaintiff was in the strip cell for three days with the open window, which he alleges made the cell's ambient temperature fall below a temperature required by state law.[2]

Plaintiff complains that the conditions he experienced in the strip cell for three days constitute cruel and unusual punishment, in violation of the Eighth Amendment. Plaintiff alleges he did not have access to water, toilet paper, soap, toothpaste, toothbrush, and clothing for the

---

[1] A strip cell is an empty cell that is often used to keep an inmate away from objects that may be used to self-inflict injuries.
[2] Plaintiff does not cite the law or describe the cell's ambient temperature.

2

three days he was in the strip cell. Plaintiff further alleges that defendants caused cruel and unusual punishment and violated due process by placing him in a strip cell without a mental health evaluation. Plaintiff requests unspecified legal, equitable, and declaratory relief because plaintiff remains paranoid, which he relates to the time he spent in the stripped cell.

II.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions. . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of

3

truth because they consist of no more than labels and conclusions. Id. Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff's failure to describe a violation of the Eighth or Fourteenth Amendment warrants the complaint's dismissal without prejudice.

A. Plaintiff fails to state an Eighth Amendment claim.

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (describing deliberate indifference as requiring a state actor to have been personally aware of facts indicating a substantial risk of serious harm and must have actually recognized the existence of such a risk). To satisfy the objective element of a conditions of confinement claim, a prisoner must demonstrate an extreme deprivation, such

4

as "serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting Strickler, 989 F.2d at 1381) (internal quotation marks omitted)).

Plaintiff fails to state an extreme deprivation by being in a strip cell for three days. Plaintiff admits that staff gave him a safety smock to wear and that he was not naked. Although plaintiff complains that the strip cell did not give him access to water, toilet paper, soap, toothpaste, and a toothbrush, he does not allege that defendants deprived him of any of these items. Plaintiff does not allege that he could not use a toilet, did not drink water, or was not fed while he was in the strip cell. See, e.g., Yarborough v. Robinson, No. 97-7603, 1998 U.S. App. LEXIS 31502, at *4, 1998 WL 879660, at *2 (4th Cir. Dec. 17, 1998) ("The denial of his right to shower and exercise for four days does not constitute an Eighth Amendment violation. . . ."); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (finding that prison officials' failure to provide an inmate with toilet paper for 5 days, or with soap, toothbrush and toothpaste for 10 days did not constitute an Eighth Amendment violation). Instead, plaintiff merely complains that he did not have immediate access to these items in a strip cell. Although plaintiff complains that the window was open and let colder air into the cell, plaintiff merely charges defendants with violating an unspecified state law that requires prison cells to remain above an unspecified temperature. See, e.g., Lopez v. Robinson, 914 F.2d 486, 492-93 (4th Cir. 1990) (noting that low cell temperatures must cause serious medical or psychological harm to implicate the Eighth Amendment). Plaintiff does not allege any consequence to the strip cell's lower ambient temperature.

5

Plaintiff does not allege any injury or substantial risk of injury from being in the strip cell for seventy-two hours. Plaintiff acknowledges that he suffered from hyperactivity depression, bi-polar disorder, and paranoia before being placed in the strip cell, which refutes the inference that a "serious or significant . . . emotional injury result[ed] from" seventy-two hours in the strip cell. Rish, 131 F.3d at 1096. See Strickler, 989 F.2d at 1381, n.9 ("At a minimum, an inmate must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition."). The mere fact that conditions of confinement may exacerbate an existing mental injury does not state an Eighth Amendment claim. See Williams v. Branker, No. 11-6329, 2012 U.S. App. LEXIS 1215, at *14, 2012 WL 165035, at *5 (4th Cir. Jan. 20, 2012) (unpublished) ("The fact that the conditions to which [the prisoner] was subjected aggravated his mental illness is an unfortunate but inevitable result of his incarceration.") (citing In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (observing that the negative effects of confinement on mental health "are unfortunate concomitants of incarceration; they do not, however, typically constitute the extreme deprivations . . . required to make out a conditions-of-confinement claim") (internal quotation marks omitted)). Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, a prisoner is not entitled to relief because of uncomfortable, restrictive, or inconvenient conditions of confinement. See Henderson v. Virginia, 2007 U.S. Dist. LEXIS 70207, at *26, 2007 WL 2781722, at *7 (W.D. Va. Sept. 21, 2007) (unpublished). Rather, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Plaintiff also fails to describe any acts or omissions by Harold Clarke or Assistant

6

Warden Fleming, and, thus, fails to allege deliberate indifference. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978) (noting respondeat superior is not a basis to impose § 1983 liability).

Plaintiff also complains that Lt. Fleming, Sgt. Mitchell, and Sykes threatened and insulted plaintiff. When a defendant makes comments that may constitute verbal abuse or harassment, those comments alone do not rise to the level of an Eighth Amendment violation. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C. 1990) (same). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment and idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life are not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A [§]1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). The law is clear that mere "threatening language

7

and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973).

B. Plaintiff fails to state a Fourteenth Amendment claim.

Plaintiff alleges that the conditions of confinement and being placed in a strip cell without a mental health evaluation constitute a violation of due process. A prisoner does not have a constitutional right to be placed in a specific security classification, and custodial classifications do not create a major disruption in a prisoner's environment. Sandin v. Conner, 515 U.S. 472, 486-87 (1995). States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . ." Id. at 484. To show the deprivation of a liberty interest regarding custody classifications, an inmate must show either that the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. Id. at 483-84.

Based upon the alleged facts, plaintiff's reclassification and transfer from segregation to a strip cell does not exceed a sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. See Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Nor does a change from segregation to a strip cell constitute

8

an "atypical and significant" hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"). Plaintiff does not have a liberty interest in avoiding placement in a strip cell to require a mental health evaluation, and a claim that prison officials have not followed their own policies or procedures does not state a constitutional claim. See United States v. Caceres, 440 U.S. 741, 752-55 (1978) (finding a violation of agency regulations is not a sufficient basis to state a due process violation); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (finding that a prisoner has no constitutionally protected liberty interest in remaining in a particular housing assignment); Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Johnson v. O'Brien, No. 7:08-cv-00022, 2008 U.S. Dist. LEXIS 41546, at *19-22, 2008 WL 2199275, at *6-7 (W.D. Va. May 27, 2008) (finding no due process violation where inmate was held six hours in ambulatory restraints and three days in a stripped cell without a hearing). Accordingly, plaintiff fails to establish a violation of the Fourteenth Amendment.

   C. <u>Plaintiff is not entitled to the requested relief</u>.

Plaintiff presently fails to allege any physical injury as a result of the short stay in the strip cell, which precludes damages. 42 U.S.C. § 1997e(e). Plaintiff's general request for equitable relief fails to explain how an equitable remedy is warranted or serves the public's

9

interests. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). The court also finds that declaratory relief is not presently appropriate for this matter. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) ("A declaratory judgment is unavailable in situations where claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.") (quoting Aetna Life Ins. v. Haworth, 300 U.S. 227, 240-41 (1937) (stating that the remedy created by the federal Declaratory Judgment Act applies only to justiciable controversies that are definite and concrete, not hypothetical, academic, or moot)).

III.

For the foregoing reasons, the court dismisses the complaint without prejudice for failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1), and denies as moot any pending motion.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff.

Entered: April 25, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge